IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 17-30909-H4-11 |
| ERNEST WATSON, JR. and | § | |
| NICOLE WATSON, | § | Chapter 11 |
| | § | |
| Debtors | § | |

## DEBTORS' THIRD AMENDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

COME NOW Ernest Watson, Jr. and Nicole Watson (the "Watsons" or the "Debtors") and propose this joint Third Amended Disclosure Statement and Plan of Reorganization (the "Plan") pursuant to §§ 1121 and 1125 of the Bankruptcy Code.

## I.    INFORMATION REGARDING THE DEBTORS

### A.  The Debtors

The Debtors are married individuals residing at 12606 Bayou Mead Court, Humble, Texas 77346 (the "Homestead"). Where appropriate, references to the Debtors shall mean the reorganized debtors.

### B.  Brief History of the Debtors and Cause of the Debtors' Chapter 11 Filing

Ernest Watson, Jr. is the president and 100% owner of Southern Sandblasting & Coatings, Inc. ("Southern Sandblasting"). Nicole Watson was and is employed by Southern Sandblasting as a manager. Although Mr. Watson obtained full time employment at United States Environmental Services six months prior to the Watsons' bankruptcy filing, the Watsons previously earned most of their income through Southern Sandblasting.

Southern Sandblasting performed sandblasting and painting of offshore vessels in the oil and gas industry. However, in the years prior to the Watsons' bankruptcy filing, business slowed

for Southern Sandblasting and it became unable to stay current on its debt obligations. Southern Sandblasting filed for chapter 11 bankruptcy on February 7, 2017, shortly before the Watsons' own bankruptcy filing. Since filing bankruptcy, Southern Sandblasting has ceased business operations and does not expect them to resume.

Because the Watsons previously earned most of their income through Southern Sandblasting, the decline in the business reduced their income such that they became unable to stay current on their own debt obligations. In addition, the Watsons had guaranteed some of the debts that Southern Sandblasting is now unable to repay. Finally, the Watsons incurred substantial trust fund penalties with the Internal Revenue Service as a result of Southern Sandblasting's failure to pay over certain withholding taxes. The reduction of the Watsons' income and the effective increase in their debt load caused them to file for chapter 11 bankruptcy.

### C.  Assets of the Debtors

The assets of the Debtors at the time of their bankruptcy filing are set forth in detail on the Debtors' schedules filed with the Court. The Debtors' principal non-exempt asset was a cabin and tree farm located at 122 C.R. 1580, Grapeland, Texas 75835, which was approximately 60 acres (the "Tree Property"). The Debtors have sold the cabin and tree farm and the net proceeds have been deposited into the registry of the court.  The amount of $260,830.23 was deposited into the registry of the court on November 2, 2018.

Other than the cash proceeds from the sale of the Tree Property, the Debtors had approximately $3,386.46 in financial accounts on the date of filing. They own their residence, have two vehicles, a trailer, a 401k, life insurance policies, and a variety of household items. Mr. Watson also owns 100% of the stock of Southern Sandblasting. However, the stock is of no value given Southern Sandblasting's financial insolvency, bankruptcy filing, and expected liquidation. The

Debtors believe that their assets other than the proceeds from the sale of the Tree Property are either exempt or of minor value.

The Debtors are proposing to pay all non-exempt assets to creditors.  The Debtors will contribute such post filing earnings as are necessary for payments under this plan, up to all disposable income for the five-year period of the plan.

For more detailed information regarding the Debtors' assets, please see the Debtors' bankruptcy schedules and monthly reports.

### D.  Source of the Information Contained in This Disclosure Statement

All information in this Plan and Disclosure Statement has been submitted by the Debtors unless otherwise indicated.

### E.  Present Condition and Post-Petition Operations of the Debtors

Since filing the bankruptcy, Mr. Watson worked for United States Environmental Services through December of 2018.  In December of 2018, Mr. Watson got a job with USADebusk, LLC ("USA Debusk").  He believes that his position there is stable and will continue for the foreseeable future. Ms. Watson has continued working at Southern Sandblasting. However, she will no longer work there once Southern Sandblasting's bankruptcy case is finalized.

The post-petition financial operations of the Debtors are set forth in the monthly operating reports filed with the Bankruptcy Court. Attached as Exhibit A are the two most recent of the Debtors' monthly operating reports, which set forth the Debtors' post-petition operations.

### F.  Anticipated Future of the Debtors, Management of the Reorganized Debtors, and Feasibility

Mr. Watson believes that his employment with USA Debusk will continue for the foreseeable future. Although Ms. Watson will no longer work for Southern Sandblasting once its

bankruptcy case is finalized, the Watsons believe that Mr. Watson's salary will be sufficient to fund the proposed bankruptcy plan. The Watsons do not expect to receive any future income from Southern Sandblasting.

The Debtors' actual income and expenses together with the projections of income and expenses for the next three years are attached hereto as Exhibit B.

### G.  Claims Summary

The Debtors' schedules reflect claims against the Debtors and their respective priorities. The bar date for filing claims was July 24, 2017 and has passed. The following table summarizes the claims currently filed against the Debtors:

| Claim # | Creditor | Amount | Status | Collateral |
|---|---|---|---|---|
| 1 | CNH Industrial Capital America, LLC | $8,850.32 | General Unsecured | Insurance paid for stolen tractor but for approximately $783.92. |
| 2 | Infiniti Financial Services | $26,124.94 | Secured | 2016 Infiniti QX60 |
| 3 | Harris County | $2,416.49 | Secured | Homestead |
| 4 | Capital One Auto Finance, a division of Capital One, N.A. | $46,667.36 | Secured | 2016 Nissan Titan XD |
| 5 | Bank of America, N.A. | $95,241.60 | Secured | Homestead |
| 6 | Internal Revenue Service | $712,776.94 | Secured, Priority, and General Unsecured | Federal Tax Lien on Property in Houston and Harris Counties |
| 7 | Crenshaw Enterprises, Ltd. | $322,811.71 | Secured | Property in Houston County |
| 8 | Capital One Bank (USA), N.A. by American InfoSource as agent | $24,967.15 | General Unsecured | - |
| 9 | Law Office of James D. Chandler | $9,620.73 | General Unsecured | - |
| 10 | Community Resource Credit Union | $23,106.44 | General Unsecured | - |

| 11 | Wells Fargo Bank, N.A. | $2,607.55 | General Unsecured | - |
| 12 | Humble Independent School District | $8,513.79 | Secured | Homestead |
| 13 | Harris County Municipal Utility District # 106 | $3,330.35 | Secured | Homestead |
| 14 | Mississippi Department of Revenue | $49,456.03 | Priority and General Unsecured | - |
| 15 | Pawnee Leasing Corporation | $10,405.75 | General Unsecured | - |
| 16 | Synchrony Bank | $1,679.63 | General Unsecured | - |
| 17 | Frederick R. Escobedo | $12,500.00 | General Unsecured | - |
| 18 | World's Foremost Bank Cabellas Club VISA | $1,901.85 | General Unsecured | |
| 19 | Harris County – 2018 Taxes | $2,660.18 | Secured Ad Valorem taxes | Homestead |

If a claim is classified by the Debtors as disputed, unliquidated, or contingent, then the creditor must file a proof of claim. If a claim was classified as disputed, unliquidated, or contingent on Schedule F by the Debtors and no proof of claim has been timely filed by the applicable bar date, then no payment will be made to such creditor.

The following table sets forth the secured and priority claims listed by the Debtors in their schedules as undisputed for which proofs of claim have not yet been filed. The Debtors have also scheduled undisputed general unsecured claims which can be viewed on Schedules E/F.

| Creditor | Amount | Status | Collateral |
| --- | --- | --- | --- |
| None | | | |

Copies of Schedules D (secured creditors) and E/F (priority and general unsecured creditors) are available from the Clerk of the Court or counsel for the Debtors.

### H.  Liquidation as an Alternative to the Proposed Plan

The Debtors are proposing a Chapter 11 Plan of Reorganization to repay their debts. However, if the Plan is not approved by the creditors and confirmed by the Court, the primary alternative for the Debtors is liquidation under chapter 7 or dismissal of the case.

In a chapter 7 liquidation, it is unlikely that the Debtors' secured and priority creditors would be paid in full. The Debtors' principal non-exempt asset is the cash from the sale of the Tree Property. However, the amount of the tax and judgment liens against the proceeds from the sale of the Tree Property exceeds the net proceeds. The amount of the IRS tax lien exceeds the amounts of the net proceeds from the sale of the Tree Property.  The Debtors' remaining assets are either exempt or of minor value. Therefore, the Debtors believe that their unsecured creditors would receive little or nothing in a chapter 7 liquidation.[1]

The Plan proposes that all creditors—secured, priority, and unsecured—be paid in full to the extent of their filed and allowed claims. Therefore, creditors will likely be paid more through the Plan than through a chapter 7 liquidation. The Debtors believe that their future income will be sufficient to pay the creditors in accordance with the terms of the proposed Plan.

See Exhibit C for a liquidation analysis.

### I.  Estimated Administrative Expenses

The Debtors estimate administrative expenses, including professional fees and expenses and pre-confirmation U.S. Trustee quarterly fees, for this case to be approximately $37,500. The administrative expenses are composed of attorney fees, U.S. Trustee quarterly fees, and a reserve for other possible administrative expenses.

---

[1] The statements in this section are dependent upon the final resolution of the claim of the IRS.  The Debtors believe that the payments from the Southern Sandblasting case will reduce the IRS claims in this case.

### J.  Avoidance and Contested Claims

At this time, the Debtors have not identified any preferential transfers or claims that should be disputed.

### K.  Summary of Litigation.

The Debtors are, or were, involved in the following recent litigation:

- *Pawnee Leasing Corporation vs. Southern Sandblasting & Coatings, Inc., Ernest Watson, Sr., Ernest Watson, Jr., and Carolyn Watson*, Case No. 2016-007428-2 in the County Court at Law No. 2 in Tarrant County, Texas, dismissed without prejudice.

- *Crenshaw Enterprises, Ltd. d/b/a Tiger Industrial Rentals vs. Southern Sandblasting & Coatings, Inc.*, Case No. CV-1408553 in the County Court at Law in Liberty County, Texas, concluded.

- *Aramsco, Inc. vs. Southern Sandblasting & Coatings, Inc. and Ernest Watson*, Case No. CAL-12098 in the County Court at Law in Liberty County, Texas, concluded.

### L.  Risks Posed to Creditors

The success of the Debtors' proposed Plan depends on Mr. Watson's continued employment at USA Debusk or employment of Mr. or Ms. Watson in a suitable alternative position should Mr. Watson cease working at USA Debusk. Therefore, the primary risk posed to creditors is that Mr. Watson will lose his current employment and neither Mr. nor Ms. Watson will be able to obtain suitable alternative employment. However, Mr. Watson's employment currently appears to be stable and the Watsons believe that it will continue for the foreseeable future.

### M. Tax Ramifications

An analysis of the federal income tax consequences of the Plan to creditors requires a review of the Internal Revenue Code of 1986, as amended, the Treasury regulations promulgated thereunder, judicial authority, and current and administrative rulings and practice. The federal income tax consequences to any particular creditor may be affected by the nature of the taxable

entity. There may also be state, local, or foreign tax considerations applicable to each creditor. Each creditor is urged to consult its accountant or tax lawyer to determine the effect of this Plan upon its claim.

### N.  Affiliate Relationships

Mr. Watson owns 100% of Southern Sandblasting, which has a bankruptcy case currently pending in the Southern District of Texas. [Case No. 17-30823]. Otherwise, the Debtors have no known affiliate relationships.

### O.  Absolute Priority Rule

The Bankruptcy Code provides that with respect to each class of creditors, such class must accept the plan or such class is not impaired under the plan. If a class does not accept the plan, then the bankruptcy court may confirm a plan over the failure of a class to vote for the plan, provided that for a class of unsecured claims, the plan must provide that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

The Debtors believe that their plan of reorganization complies with the absolute priority rule in the Bankruptcy Code that is contained in Section 1129(b). The Debtors are not retaining any non-exempt property and are paying to the unsecured creditors an amount in excess of their non-exempt property as of the filing date.

### Definitions

"Effective Date" shall be the date that is fifteen (15) days after a final and non-appealed order is entered confirming the Debtors' chapter 11 plan of reorganization.

## II.    PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS

**Plan Concept.** The Debtors' Plan is reorganizing in nature. It provides for the division of claims into classes. Each of the claims in each class shall be treated in the manners and methods described below:

Class 1. Administrative Claims as of the Effective Date

Class 1 consists of the Allowed Claims entitled to priority under §507(a)(2) of the Bankruptcy Code, including fees for services rendered and expenses incurred through the Effective Date by Debtors' counsel and other professionals appointed by the Court for the Debtors, the U.S. Trustee's pre-confirmation quarterly fees, and any other administrative expenses.

The estimated amount of claims in Class 1, including professional fees and U.S. Trustee fees is approximately $37,500. Except as provided below, each creditor in Class 1 shall be paid in cash on the Effective Date if the creditor's claim has matured or been approved or allowed by the Court, if such approval or allowance is required. Fees and expenses for counsel for the Debtors will be paid at an agreed amount after confirmation.

The Debtors may use funds from the registry of the court after payment to the IRS to pay the remaining amounts owed to Baker & Associates.  The Debtors will request approval from this court to distribute funds to Baker & Associates for payment of outstanding approved legal fees.

If the amounts in the court registry are not sufficient to pay the remaining legal fees and expenses of Baker & Associates, the budget projects payments of approximately $500 per month to counsel for the Debtors until the fees and expenses are paid. If Counsel and the Debtors are in agreement as to the amounts to be paid for the legal fees and expenses, Counsel for the Debtors has agreed to accept payments over a period of time in lieu of payment at confirmation.  At this time, the Debtors project that the funds in the registry of the court will be sufficient to pay the legal

fees of Baker & Associates.

All fees for services rendered and expenses incurred after the Effective Date by court-appointed counsel and other professionals for the Debtors shall be paid by the Debtors in the ordinary course of business without the necessity of filing fee applications or seeking approval or allowance of the Court. The reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

Quarterly fees owed to the U.S. Trustee pre-confirmation will be paid on the Effective Date of the Plan. After confirmation and until this case is closed by the Court, the reorganized Debtors shall pay quarterly fees to the U.S. Trustee as they accrue and serve on the U.S. Trustee a quarterly financial statement or affidavit of quarterly disbursements.

The payments to Baker & Associates will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 2. Secured Claim of Capital One Auto Finance

Class 2 consists of the secured claim of Capital One Auto Finance, a division of Capital One, N.A. ("Capital One Auto"). Capital One Auto has filed a proof of claim against the Debtors in the amount of $46,667.36. The claim is secured by the Debtors' 2016 Nissan Titan.

The Debtors will continue to pay Capital One Auto the monthly payments on the vehicle in accordance with the terms of the original note. Payments to Class 2 will continue according to the normal payment cycles.

Any fees or expenses that have accrued during the chapter 11 case will be paid by the Debtors over a 12-month period starting the month after the Effective Date.

Class 2 is impaired.

Class 3. Secured Claim of Infiniti Financial Services

Class 3 consists of the secured claim of Infiniti Financial Services ("Infiniti"). Infiniti has filed a proof of claim against the Debtors in the amount of $26,124.94. The claim is secured by a 2016 Infiniti QX60.

The Debtors will continue to pay Infiniti the monthly payments on the vehicle in accordance with the terms of the original note. Payments to Class 3 will continue according to the normal payment cycles.

Any fees or expenses that have accrued during the chapter 11 case will be paid by the Debtors over a 12-month period starting the month after the Effective Date.

Class 3 is impaired.

Class 4. Secured Claim of Bank of America, N.A.

Class 4 consists of the secured claim of Bank of America, N.A. ("Bank of America"). Bank of America has filed a proof of claim for this debt in the amount of $95,241.60. The claim is secured by the Debtors' Homestead.

The Debtors will continue to make monthly payments to Bank of America according to the terms of the original note. Payments to Class 4 will continue according to the normal payment cycles.

Any fees or expenses that have accrued during the chapter 11 case will be paid by the Debtors over a 12-month period starting the month after the Effective Date.

Class 4 is impaired.

Class 5. Secured Claim of Resolution Finance, LLC

Class 5 consists of the secured claim of Resolution Finance, LLC ("Resolution"). Resolution has not filed a proof of claim in the Bankruptcy Court. The Debtors have scheduled Resolution's claim in the amount of $400.00. The amount was paid in full.

Class 5 is not impaired.

Class 6. Secured Claim of Harris County

Class 6 consists of the secured claim of Harris County for estimated *ad valorem* property taxes on the Debtors' Homestead for the 2017 tax year. Harris County has filed a proof of claim estimating the 2017 property taxes at $2,416.49. The claim is secured by the Debtors' Homestead.

Harris County shall retain its statutory lien securing its post-petition tax debt until such time as the tax debt is paid in full. Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2018 and subsequent tax years) owing to Harris County in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Harris County to file an administrative expense claim and/or request for payment.

The Debtors have paid the 2017 property taxes on their Homestead to Harris County in the full amount. No amounts are owed to Harris County for 2018.

Any amounts owed by the Debtors for 2018 and future taxes shall be paid directly by the Debtors to Harris County.

Class 6 is not impaired.

Class 7. Secured Claim of Harris County Municipal Utility District # 106

Class 7 consists of the secured claim of Harris County Municipal Utility District #106 ("Harris County MUD") for estimated *ad valorem* property taxes on the Debtors' Homestead for the 2017 tax year. Harris County MUD has filed a proof of claim estimating the 2017 property taxes at $3,330.35. The claim is secured by the Debtors' Homestead.

Harris County MUD shall retain its statutory lien securing its post-petition tax debt until such time as the tax debt is paid in full. Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2018 and subsequent tax years) owing to Harris County MUD in the ordinary course of

business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Harris County MUD to file an administrative expense claim and/or request for payment.

The Debtors paid the 2017 property taxes on their Homestead to Harris County MUD in the full amount.

Class 7 is not impaired.  No amounts are owed to Harris County MUD.

Class 8. Secured Claim of Humble Independent School District

Class 8 consists of the secured claim of Humble Independent School District ("Humble ISD") for *ad valorem* property taxes on the Debtors' Homestead for the 2016 and 2017 tax years. Humble ISD has filed a proof of claim asserting 2016 property taxes in the amount of $3,113.25 and estimating 2017 property taxes in the amount of $5,400.54. The claim is secured by the Debtors' Homestead.

The Debtors will pay the 2016 property taxes on their Homestead to Humble ISD in the principal amount of $3,438.96 at 12% interest in 12 approximately equal monthly payments.[2] Payments to Class 8 for 2016 property taxes will start on the fifth day of the first full calendar month following the Effective Date of the Plan.  Interest will be paid at the rate of 12% per annum from the petition date of February 10, 2017.

Humble ISD shall retain its statutory lien securing its post-petition tax debt until such time as the tax debt is paid in full.  Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2018 and subsequent tax years) owing to Humble ISD in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of

---

[2] The monthly payment amount to be determined with the creditor after confirmation.

Humble ISD to file an administrative expense claim and/or request for payment.

The Debtors have paid the 2017 property taxes on their Homestead to Humble ISD in the full amount.

Humble ISD shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full.  Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2018 and subsequent tax years) owing to Humble ISD in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Humble ISD to file an administrative expense claim and/or request for payment.

If the Reorganized Debtors should fail to make any payments as required in this Plan, Humble ISD shall provide written notice of that default by sending written notice by certified mail to Debtors and Debtors' attorney advising of that default, and providing the Reorganized Debtors with a period of fifteen (15) days to cure the default.  In the event that the default is not cured within fifteen (15) days, Humble ISD may, without further order of this Court or notice to the Debtors, pursue all of their rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  If Humble ISD sends a third notice within a twelve-month time period, the stay shall automatically terminate.  Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtors is still paying any pre-petition debt, shall be considered an event of default.  Humble ISD shall provide Debtors with written notice of that default and a fifteen (15) day opportunity to cure said default.  In the event that the Reorganized Debtors fail to timely cure the post-petition and/or post-confirmation default, Humble ISD may, without further order of this court or notice to the Debtors, pursue all of its rights and remedies available to it under the Texas Property Tax Code to

collect the full amount of all taxes, penalties and interest owed.  The Debtors are entitled to two (2) notices per twelve (12) month time period.  Upon the third notice of default in any twelve-month time period, Humble ISD may, without further order of this court or notice to the Debtors, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.

Class 8 is impaired.

Class 9A. Secured Claims of the Internal Revenue Service

Class 9A consists of the secured claims of the Department of the Treasury-Internal Revenue Service (the "IRS"). The IRS has filed a proof of claim in the total amount of $712,776.94. The secured and priority amounts asserted by the IRS in its proof of claim are as follows:

| Amount | Status | Collateral | Date Perfected |
|---|---|---|---|
| $249,985.12[3] | Secured | Tree Property[4] | 12/01/2015 |
| | | All of the Debtors' Property in Harris County | 03/18/2015 |
| $384,149.08[5] | Secured | All of the Debtors' Property in Harris County | 05/09/2016 and 09/06/2016 |
| $78,642.74 | Priority | - | - |

---

[3]  This amount is the sum of the tax due for the tax periods 06/30/2012 and 09/30/2012 and the interest thereon as stated in the IRS's proof of claim.

[4]  The IRS filed a Notice of Tax Lien in Houston County. The Tree Property is the only property that the Debtors own in Houston County.

[5]  This amount is the sum of all remaining secured amounts due as stated in the IRS's proof of claim.

|  |  |  |  |
|---|---|---|---|

The amounts owed to the IRS are almost entirely for trust fund penalties under 26 U.S.C. § 6672 related to withholding taxes that Southern Sandblasting failed to pay over to the IRS.[6] The Debtors expect that the amounts they owe to the IRS for trust fund penalties will be reduced after Southern Sandblasting liquidates its assets and pays its creditors, according to the terms of its chapter 11 plan. In particular, Southern Sandblasting's proposed chapter 11 plan provides for the sale of real property located at 8458 FM 1960 E, Dayton, Texas 77535 (the "8458 Property") and for a portion of the proceeds from that sale to be applied to the secured claim of the IRS for federal withholding taxes that Southern Sandblasting failed to pay. Southern Sandblasting's proposed chapter 11 plan is filed with the bankruptcy court in Case No. 17-30823.  The chapter 11 plan of Southern Sandblasting has been confirmed.[7] After application of the funds from Southern Sandblasting, the Debtors estimate that approximately $93,092.45 will be owed to the IRS. The funds held in the registry of this court for creditors will be used to pay such amount to the IRS. The Debtors will request approval from this court to distribute such amount to the IRS from the funds in the Registry of this court after confirmation and prior to the Effective Date.

*Amounts Secured by the Tree Property*

The Debtors have sold the Tree Property. The net proceeds from the sale of the Tree Property have been deposited into the registry of the court. The net proceeds from the sale were $260,830.23. The Debtors will apply all amounts received from the sale of the Tree Property, less expenses of the sale, to the IRS's secured claim of $249,985.12 or however much of the IRS's

---

[6] The Watsons owe $26,422 for 2016 federal income taxes pursuant to the proof of claim filed by the IRS.
[7] The real property of Southern Sandblasting has also been sold and the funds from the sale are in the registry of the court.

claim remains at the time of payment that is secured by the Tree Property. The Debtors expect that the IRS's claim secured by the Tree Property will be paid in full from the proceeds of the sale of the Tree Property.   The remaining amounts that are not secured may be used to pay for administrative expenses.

After application of the amounts from the Southern Sandblasting case, the Debtors expect that the amount of $93,092.45 will be due to finish payment of the claim of the IRS in full, for both the secured and priority amounts.

The Debtors will request an order from this court to distribute such amount to the IRS from the funds in the Registry of this court prior to the Effective Date.   If the amounts owed to the IRS are determined to be materially different, then the Debtors will pay the additional amounts to the IRS within the time period allowed by the Bankruptcy Code, or by no later than February 10, 2023.

*All Other Secured and Priority Amounts Owed to the IRS*

For the reasons explained above, the Debtors expect that the $384,149.08 amount secured by property in Harris County and the $78,642.74 priority amount owed to the IRS will be reduced after Southern Sandblasting pays the IRS proceeds from the sale of the 8458 Property according to the terms of its confirmed chapter 11 plan. The Debtors have requested an updated amount owed to the IRS and have (or will) filed an objection to the claim of the IRS.

If the Debtors owe additional funds to the IRS, the Debtors will begin making payments on the remaining amounts after the payments from Southern Sandblasting have been finalized. If the amounts owed to the IRS are not finalized upon confirmation of this plan, the Debtors will make an estimate of the remaining amounts and start payments on such remaining amounts no later than thirty (30) days after the Effective Date of this plan, if any amounts are owed.  At this time, the Debtors do not believe that any additional amounts will be owed and do not anticipate

making any estimated payments.

On the fifth day of the first full calendar month following payment to the IRS of its share of proceeds from the Tree Property sale, the Debtors will begin making monthly payments to Class 9A for any remaining amounts that the Debtors owe to the IRS, including any amounts that were secured by the Tree Property and remain unpaid; provided that at this time the Debtors do not believe that any further amounts will be owed to the IRS.

The amount of the monthly payments will be such that the remaining amounts owed to the IRS on the date immediately preceding the first such monthly payment will be fully paid within sixty (60) months of the filing date of the chapter 11 case, or by February 10, 2023.

*Application of Amounts Received*

The IRS will apply all amounts received from the Debtors, including monthly payments and proceeds from the Tree Property sale, in the following order: (1) first to any tax due; (2) then to any interest; and (3) then to any penalties. The IRS will apply all amounts received from the Debtors in this order regardless of the origin of the payment, regardless of the classification of the amounts owed as secured or priority, and regardless of the specific property securing the amounts owed.

Class 9A is impaired.

Class 9B. Priority Claims of the Internal Revenue Service

Class 9B consists of the priority claims of the IRS.  The proof of claim has a priority amount of $78,642.74.

If the claim amount of the IRS in this case is not finalized on confirmation, the Debtors will make an estimate of the remaining amounts and start payments on such remaining amounts no later than thirty (30) days after the Effective Date of this plan; provided that at this time the

Debtors do not believe that any further amounts will be owed.

The Debtors will pay in full the allowed amount of the priority claim to the IRS at 4% interest on or before February 10, 2023.

Class 9B is impaired.

Class 10. Crenshaw Enterprises, Ltd.

Class 10 consists of the secured claim of Crenshaw Enterprises, Ltd. ("Crenshaw"). Crenshaw has filed a proof of claim in the amount of $322,811.71. Crenshaw had recorded in Houston County, Texas on November 16, 2016, at Instrument No. 1603932 an Abstract of Judgment for $320,829.54 (the "Judgment Lien"). The only real property that the Debtors own in Houston County was the Tree Property.

The bankruptcy case of the Watson's was filed on February 10, 2017. The chapter 11 case was filed 87 days after the Judgment Lien was recorded.

The recorded Judgment Lien is a preferential transfer under 11 U.S.C. Section 547. The recording of the Judgment Lien was for the benefit of Crenshaw. The Judgment Lien was recorded for the account of an antecedent debt, namely the amounts owed in the judgment against Ernest Watson, Jr. by Crenshaw. The Judgment Lien was recorded while the Debtors were insolvent. The Judgment Lien was recorded within 90 days before the filing of their bankruptcy case. The Judgment Lien will enable Crenshaw to receive more than Crenshaw would receive if this case were converted to chapter 7, the transfer had not been made, and Crenshaw received payment of the judgment amount to the extent provided by the provisions of the Bankruptcy Code. There are no applicable exceptions to the preference provisions of section 547 for the Crenshaw Judgment Lien.

Confirmation of this plan shall be a determination that the Judgment Lien is a preferential

transfer and the Judgment Lien shall be deemed avoided pursuant to section 547.  The Debtors may record the confirmation order in the real property records to remove the judgment lien from the records if necessary.

The order approving the sale of the Tree Property provided that the liens existing on the date of the sale would attach to the net proceeds deposited in the registry of the court.  The confirmation of this plan shall be a determination that Crenshaw has no lien or preference claim to the net proceeds in the registry of this court from the sale of the Tree Property.  The confirmation of this plan shall be a determination that Crenshaw does not have a secured claim, lien or encumbrance against the proceeds of the Tree Property in the registry of the court.

As a result, the claim of Crenshaw shall be treated as an unsecured claim under class 12.

Class 10 is impaired.

Class 11. Priority Claim of the Mississippi Department of Revenue

Class 11 consists of the priority claim of the Mississippi Department of Revenue (the "Mississippi DOR"). The Mississippi DOR has filed a proof of claim in the amount of $49,456.03, of which $45,359.13 is entitled to priority.

The Debtors will pay the principal amount of $45,359.13 to the Mississippi DOR at 4% interest on or before February 10, 2023.  Payments to Class 11 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.  Payments at $475 per month will continue until the priority claim has been fully paid.

If the priority claim to the Mississippi DOR is reduced by payments by Southern Sandblasting, then the payments to the Mississippi DOR will be reduced.

To the extent that funds remain in the Registry of this court for payment to the Mississippi DOR, the Debtors will request an order from this court to distribute all or as much as possible to

the Mississippi DOR from the funds in the court registry.  At this time, the Debtors estimate that the amounts in the registry will be sufficient to fully pay the claim of the Mississippi DOR.

The general unsecured portion of the Mississippi DOR's claim, which is in the amount of $4,096.90, will be treated as a separate claim in Class 12, containing general unsecured creditors.

Class 11 is impaired.

Class 11A. Priority Claim of the Texas Comptroller

Class 11A consists of the priority claim of the Texas Comptroller of Public Accounts for the State of Texas ("Texas Comptroller").  The Texas Comptroller filed an amended claim in the chapter 11 case of Southern Sandblasting & Coatings, case number 17-30823, in the amount of $149,455.74.  The taxes owed in the claim were $66,913.01. The Texas Comptroller has asserted that all amounts are priority and non-dischargeable.

The Texas Comptroller agreed to settle the entire claims of both Southern Sandblasting and the Watsons (in this case) for a payment of $50,000, consisting of $25,000 paid by Southern Sandblasting and the second $25,000 being paid by the Watson's in this chapter 11 case.

The order confirming the chapter 11 plan of Southern Sandblasting (case number 17-30823) provided as follows on pages 3-4 at docket #140:

(d)  "The Texas Comptroller is to receive an additional $25,000 from the chapter 11 plan of Ernest Watson, Jr. and Nicole Watson for the remaining $25,000.  Such amount is to be paid to the Texas Comptroller on or before the Effective Date of the Ernest Watson, Jr. and Nicole Watson's chapter 11 plan."

After confirmation but before the Effective Date, the Watson's shall request an order from this court to disburse the amount of $25,000 to the Texas Comptroller. Such funds shall be part of the funds currently held in the Registry of this court.  The Debtors are authorized to request on

order of disbursement for the payment of the $25,000 to the Texas Comptroller upon approval of this plan.

Class 12. General Unsecured Claims

Class 12 consists of all unpaid, pre-petition, allowed, unsecured, non-priority claims against the Debtors. Based on the Debtors' schedules and the proofs of claim currently filed with the Bankruptcy Court, the Debtors estimate that the total amount of claims in this class—including the unsecured and non-priority portions of the claims of secured and priority creditors treated as claims in this class—is $814,181.42. However, this estimate is likely to be high because it assumes no reduction in the amount of the IRS's claims against the Debtors due to the liquidation of Southern Sandblasting pursuant to its chapter 11 plan.

The Debtors will pay a total of $5,000 on the claims in Class 12. Beginning on the first anniversary of the Effective Date, the Debtors will pay the unsecured creditors in Class 12 the amount of $100 per month until the total amount of $5,000 has been paid. The Debtors will hold funds for distributions to creditors until a reasonable payment can be made to each creditor.

Each payment to Class 12 will be divided among the creditors in Class 12 pro rata, in proportion to the amount of each creditor's claim.

Any failure of the Debtors to timely make payments to the creditors in Class 12 shall constitute an event of default under the Plan as to the Class 12 creditors. In the event of such default, any creditor affected by the default may send a notice of the default to the Debtors. If the default is not cured within thirty (30) days of the date of the notice, the affected creditor may proceed to collect all amounts owed under state law without further notice and without recourse to the Bankruptcy Court.

*The Debtors are not retaining any non-exempt property in this case.*

Class 12 is impaired.

## PAYMENT OF FUNDS FROM THE COURT REGISTRY

The funds of the Debtors from the sale of the Tree Farm that are held in the registry of the court shall be paid or distributed as follows:

First, the remaining, allowed secured claims of the IRS and any other creditor with a security interest in such funds shall be paid.  Other than the IRS, no other creditors or parties are known to have a secured claim in the funds in the registry of the court.

Second, administrative expenses including amounts payable to attorneys and other professionals of the Debtor shall be paid in full.

Third, any other priority claims shall be paid in full.

Fourth, if any funds are remaining, the remaining funds shall be paid to the unsecured creditors in Class 12.

## ACCEPTANCE OR REJECTION OF PLAN

Each impaired class of Claims shall be entitled to vote separately to accept or reject this Plan unless that class receives no distribution under the Plan. Any class receiving no distribution is deemed to have rejected the Plan. Any unimpaired class of Claims shall not be entitled to vote either to accept or to reject this Plan and is deemed to have accepted the Plan. Each creditor should read this Plan and Disclosure Statement, then complete and return the attached ballot.

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by Creditors and holders of interests, at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting and fifty-one percent (51%) in number of Allowed Claims voting in each Class of Claims must accept the Plan. Whether or not you expect to be present at the hearing, you are urged to fill in, date, sign, and properly mail the Ballot for Accepting or Rejecting Plan of

Reorganization to Mr. Reese W. Baker, Attorney for Debtor, 950 Echo Lane, Ste 200, Houston, Texas 77024.

**IF ANY CLASS REJECTS THE PLAN, THE DEBTORS MAY SEEK TO "CRAMDOWN" THE CONFIRMATION OF THE PLAN PURSUANT TO 11 U.S.C. §1129(b). THE BANKRUPTCY CODE ALLOWS THE DEBTORS TO REQUEST THE COURT TO CONFIRM THE PLAN NOTWITHSTANDING THE REJECTION OF ANY CLASS OR CLASSES OF CREDITORS IF THE DEBTORS CAN DEMONSTRATE THAT (i) THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND (ii) THE PLAN IS FAIR AND EQUITABLE WITH RESPECT TO EACH CLASS OF CLAIMS OR INTERESTS THAT IS IMPAIRED AND HAS NOT ACCEPTED THE PLAN. IN ORDER TO "CRAMDOWN" THE PLAN, THE DEBTORS WILL HAVE TO DEMONSTRATE TO THE BANKRUPTCY COURT AT A HEARING THAT THESE TWO STANDARDS HAVE BEEN SATISFIED. SUCH HEARING WOULD BE PART OF THE CONFIRMATION HEARING ON THE PLAN AND ALL CREDITORS MAY BE PRESENT AND WOULD HAVE AN OPPORTUNITY TO PARTICIPATE IN SUCH HEARING.**

## EXECUTORY CONTRACTS

Upon confirmation of this Plan, the Debtors shall be deemed to have assumed the following executory contracts:

1. A travel club contract with Legendary Preferred Destinations, whose address is P.O. Box 35452, Las Vegas, NV 89133.

All other executory contracts and leases are deemed rejected by the Debtors as of the Effective Date.

## JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain exclusive jurisdiction of the case after the Confirmation

Date with respect to the parties to, and the subject matter of, this Plan and the Claims, applications, orders, damages, and other events as described in the Plan.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code. These include the following requirements: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting the votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are *not* the only requirements listed in §1129, and they are not the only requirements for confirmation.

### A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes; and (2) impaired.

In this case, the Debtors believe that Classes 8 through 12 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

#### 1. What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the debtor has scheduled the claim on the debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not

allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim against Pioneer was July 24, 2017.

### 2. What Is an Impaired Claim?

As noted above, the holder of an allowed secured claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is **Not** Entitled to Vote?

The holders of the following types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;
- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims in unimpaired classes;
- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

***Even if you are not entitled to vote on the Plan, you may have a right to object to the confirmation of the Plan.***

### 4. Who Can Vote in More Than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.  Votes Necessary to Confirm Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code, including the "absolute priority rule." Under the absolute priority rule, the Court may confirm the Plan over the failure of a class to vote for the Plan provided that for a class of unsecured claims, the Plan must provide that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date of the Plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. The Debtors believe that the Plan complies with the absolute priority rule in the Code.

A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that

has not voted to accept the Plan.

*You should consult your own attorney if a "cram down" confirmation will affect your claim, as the variations on this general rule are numerous and complex.*

## EFFECT OF CONFIRMATION

As provided for in Section 1141 of the Bankruptcy Code, the provisions of the Debtors' Plan shall bind the Debtors and any creditor under the Plan, whether or not the claim of the creditor is impaired under the Plan and whether or not the creditor has accepted the Plan. As provided for in Section 1141(b) of the Bankruptcy Code, confirmation of the Debtors' Plan vests all of the property of the estate in the Debtors. After confirmation of the Debtors' Plan, all property of the Debtors dealt with by the Plan (which includes all property of the Debtors) is free and clear of all liens, claims, and interests of creditors and equity security holders, except to the extent provided in this Plan. So long as the payments proposed by this Plan are made by the Reorganized Debtors, no creditor may seek to collect any amounts from the Debtors that were owed prior to the filing of the chapter 11 case or are provided in this Plan.

Upon completion of all payments set forth in this Plan, the Debtors may request that the case be re-opened for the purpose of entering an order of discharge. After determination by the Court that the payments under the Plan have been made, the Court may enter an order of discharge. Upon entry of an order of discharge, the Debtors will be discharged from any debt that arose before confirmation of this Plan to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtors will not be discharged from any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

The rights afforded in the Plan shall be in exchange for and in complete satisfaction,

discharge, and release of all claims of any nature whatsoever occurring on or prior to the confirmation date, including any interest accrued thereon from and after the petition date, against the Debtors and Debtors-in-Possession, or any of their assets or properties. Except as otherwise provided herein, upon the payment of the amounts provided in this Plan, in accordance with Section 1141 of the Code, all such claims against the Debtors and Debtors-in-Possession shall be satisfied, discharged, and released in full. Except as otherwise provided herein, all creditors shall be precluded from asserting against the Debtors any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature occurring on or prior to the confirmation date.

## DISPUTED CLAIMS; OBJECTIONS TO CLAIMS

The Debtors may file an objection to any disputed Claim within sixty (60) days from the Effective Date of the Plan. Objections not filed within the foregoing time period shall be deemed waived, except to the extent that the grounds for the objection could not have been discovered prior to the expiration of the sixty (60) day time period. If an objection is filed to any claim, payments on the claim will not begin until after an Order of the Court allowing the claim has become final.

## FEASIBILITY TO PERFORM AND IMPLEMENTATION OF THE PLAN

The Debtors believe that the proposed Plan is feasible. Mr. Watson's current employment is stable and is expected to continue for the foreseeable future. The Debtors believe that Mr. Watson's employment will provide sufficient income for the Debtors to fund the proposed Plan.

The projections attached as Exhibit B demonstrate the feasibility of the plan.

## FINANCIAL INFORMATION FILED WITH THE COURT

A.      Statement of Financial Affairs

B.      Schedules A through H, and Summary of Schedules

C.      Monthly Operating Reports

PLEASE BE ADVISED THAT THE FINANCIAL INFORMATION ENUMERATED IN SUBPARAGRAPHS A THROUGH C ABOVE IS AVAILABLE IN THE CLERK'S OFFICE OF THE UNITED STATES BANKRUPTCY COURT, 515 RUSK, HOUSTON, TEXAS.

## **EXHIBITS**

**A.      Monthly Operating Reports for the two months prior to the date of this Plan**

**B.      Revenue projections and payments for three (3) years following the Effective Date.**

**C.      Liquidation analysis under Chapter 7**


Dated: March 18, 2019

/s/ *Ernest Watson, Jr.*
_____
Ernest Watson, Jr.


/s/ *Nicole Watson*
_____
Nicole Watson




ATTORNEY FOR THE DEBTORS:

/s/ *Reese Baker*
Reese Baker
TX Bar No. 01587700
Baker & Associates
950 Echo Lane, #200
Houston, Texas 77024
(713) 979-2279
(713) 869-9100 Fax

Counsel for the Debtors has made no independent
investigation of the information contained herein.